**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Pathway Medical Technologies, Inc., a Delaware corporation, | No. CV11-0857 PHX DGC |
| Plaintiff, | **ORDER** |
| vs. | |
| Steven Richard Nelson, et al., | |
| Defendants. | |

Plaintiff Pathway Medical Technologies, Inc. has filed an application for a temporary restraining order ("TRO") and preliminary injunction. Doc. 44. The motion is fully briefed (Docs. 60, 62), and the Court heard oral argument on September 27, 2011. For reasons that follow, the motion will be denied

**I.     Background.**

Pathway develops, manufactures, and markets medical devices for the treatment of arterial disease.  Defendant Steven Nelson was employed by Pathway from November of 2008 to February of 2011.  Nelson worked as a sales consultant for Pathway, focusing on many of Pathway's accounts in Arizona.

Following his resignation from Pathway, Nelson went to work for ev3, Inc., a direct competitor of Pathway in the field of atherectomy devices.  Such devices use a catheter with a cutter head to remove hard and soft plaque, calcium, thrombus, and fibrotic lesions from arteries.

Pathway claims that Nelson is violating a Confidential Information and Inventions Agreement ("Agreement") he signed while employed with Pathway. The Agreement provides that for a period of one year following the end of his employment Nelson will not "directly or indirectly, on behalf of myself or others (a) divert or take away any customer, affiliate, or independent contractor of the company . . . or (c) attempt or assist any of the foregoing." Doc. 44-1 at 7. Pathway alleges that Nelson, on behalf of ev3, has had contact with doctors and hospitals that are customers of Pathway. Pathway further asserts that its sales to these doctors and hospitals have dropped since Nelson's employment at ev3 began, while ev3's sales to these doctors and hospitals have increased. Pathway asks the Court to enter a TRO that would prohibit Nelson from "[c]alling on any Pathway customers in Arizona with respect to ev3's competing atherectomy devices," "[t]raining or assisting others at ev3 with respect to sales of competing products to Pathway customers in Arizona," and "otherwise diverting or taking away, directly or indirectly, any customer . . . of Pathway in Arizona, or attempting or assisting any of the foregoing." Doc. 44-2 at 2.

## II. Legal Standard.

To obtain a TRO or preliminary injunction, a plaintiff must show that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest. *Winter v. Natural Res. Def. Council*, 555 U.S. 7, 129 S. Ct. 365, 374 (2008). The test includes a sliding scale. If the plaintiff shows that the balance of hardships tips sharply in his favor, he need not make as strong a showing of the likelihood of success on the merits – the existence of serious questions will suffice. *Alliance for Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134-35 (9th Cir. 2011).

The Court will first address whether Pathway has shown a likelihood of success on the merits or the existence of serious questions. Because the Court concludes that it has shown neither, the Court need not address the other requirements for a TRO or preliminary injunctive relief.

## III. Analysis.

The Agreement provides that it is "governed by the laws of the State of Washington[.]" Doc. 44-1 at 8. Pathway argues that this choice of law should be applied by the Court and that the non-compete provision is enforceable under Washington law. Nelson argues that the choice of law provision is invalid, that Arizona law should govern this case, and that the non-compete provision is invalid under Arizona law.

A district court sitting in diversity jurisdiction applies the choice of law rules of the state in which it sits. *Abogados v. AT&T, Inc.*, 223 F.3d 932, 934 (9th Cir. 2000). Where a contract contains a choice of law provision, Arizona courts look to section 187 of the Restatement (Second) of Conflicts to determine whether it is enforceable. *Swanson v. The Image Bank, Inc.*, 77 P.3d 439, 441 (Ariz. 2003).

### A. Section 187(1).

Section 187(1) provides that "[t]he law of the state chosen by the parties to govern their contractual rights and duties will be applied if the particular issue is one which the parties could have resolved by an explicit provision in their agreement directed to that issue." RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 187(1). Pathway argues that this provision is satisfied if the subject matter of the lawsuit is one on which the parties could contract. Because parties routinely contract about an employee's post-employment obligations to his or her former employer, Pathway argues, section 187(1) is satisfied and the Agreement's choice of Washington law is enforceable. Nelson asserts that section 187(1) has a narrower meaning – the choice of law provision is valid if the parties could have agreed in their contract to the same provisions that the chosen law would impose, and could have done so under the law of the state with the most significant contacts with the transaction under Restatement § 188.

The Court concludes that Nelson is correct. Illustrations 4 and 5 to section 187 of the Restatement make clear that section 187(1) is satisfied only if the parties could have agreed by contract to the terms that will be imported into their relationship through their choice of law. The illustrations explain that if the state with the most significant

relationship to the transaction would have prohibited the parties from agreeing on commissions of five percent for a trustee (because that state limits trustee commissions to four percent), then the parties cannot achieve a five percent commission by choosing the law of a state that would allow such a commission. In other words, the Court must ask under section 187(1) whether the parties could have done by contract what they are attempting to do by choice of law.

In this case, the Agreement's selection of Washington law would appear to have at least two significant consequences: (1) Washington law adopts a liberal approach to non-compete agreements, allowing such agreements to be enforced even if they are quite broad and last for long periods of time, and (2) Washington allows a court to rewrite a non-compete agreement to render it reasonable and enforceable if the court concludes that it otherwise would be unreasonable and unenforceable. As will be explained in more detail below, Arizona law does not embrace either approach. Arizona law requires that non-compete provisions be narrowly drafted and no greater than necessary to protect the employer's legitimate interests. Arizona cases also hold that courts may not rewrite non-compete agreements to make them reasonable. Thus, the Agreement in this case attempts to accomplish by the incorporation of Washington law what it could not accomplish in the plain language of the contract under Arizona law. As a result, it would appear that section 187(1) is not satisfied.

This conclusion is supported by *DCS Sanitation Management, Inc. v. Castillo*, 435 F.3d 892 (8th Cir. 2006), a case which held that section 187(1) was inapplicable to a dispute over the enforceability of a non-compete provision. The contract in question chose Ohio law, while Nebraska was the state with the most significant contacts with the transaction. Because Ohio law permits a court to rewrite a non-compete agreement to render it reasonable and Nebraska law does not, the Eighth Circuit held that the choice of Ohio law was ineffective under section 187. *Id*. at 896. The court held that the contract made in Nebraska could not accomplish by the incorporation of Ohio law what it could not accomplish in its own terms under Nebraska law.

Arizona law comports with this holding.  In *Swanson*, the Arizona Supreme Court was asked to address the enforceability of a choice of law provision that would have had the effect of waiving the plaintiff's right to treble damages under an Arizona statute.  In deciding whether the choice of law provision was valid, the Arizona Supreme Court looked to what the parties could have done under Arizona law.  Although the Arizona statute in question authorized a recovery of treble damages, it did not prohibit parties from waiving the right to such damages.  The Arizona Supreme Court reached this conclusion with respect to section 187(1):

> [W]e hold that Arizona statutory law does not preclude parties from agreeing by express contractual provision in a negotiated contract to surrender of the right to a statutory remedy under § 23-355.  Because they may do so by express provision, it follows, under the law, that they may do so by adopting the law of another state.

*Swanson v. Image Bank, Inc.*, 77 P.3d 439, 443 (Ariz. 2003) (footnote omitted).  In other words, the Arizona Supreme Court looked to Arizona law to determine whether the parties could accomplish by contract in Arizona what they were seeking to accomplish by choosing another state's law.  Because they could, the choice of law provision was valid under section 187(1).

Here, the parties could not, under Arizona law (the state with the most significant contacts with this transaction under Restatement § 188, as will be discussed below), agree to an overly broad non-compete provision, nor to a provision that allowed a court to rewrite the non-compete provision to make it reasonable.  Because the parties could not accomplish by contract in Arizona what the Agreement seeks to accomplish by choosing Washington law, the Court concludes that the choice of law provision is not valid under section 187(1).

**B.**     **Section 187(2).**

If a choice of law provision is not valid under section 187(1), the Court must turn to section 187(2) to assess its validity.  That provision provides as follows:

>    (2) The law of the state chosen by the parties to govern their contractual rights and duties will be applied, even if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to that issue, unless either
>
>    (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or
>
>    (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.

RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 187(2).

Arizona appears to have the greatest interest in this matter under the factors identified in section 188 because (a) it was the place of contracting between Pathway and Nelson, (b) it was the place where the contract was negotiated and signed, (c) it was the place of performance of Nelson's employment duties, (d) it is the location of the subject matter of the contract (the doctors and hospitals to whom Nelson sold Pathway products), and (e) it is the domicile of Nelson. All of these factors suggest that Arizona has the most significant relationship with this case. *See* RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 188(2)(a)-(e).

Application of Washington law would appear to be contrary to a fundamental policy of Arizona law in the two respects identified above. First, Arizona law does not approve of broad non-compete provisions. Such provisions are "unreasonable and thus will not be enforced" if "the restraint is greater than necessary to protect the employer's legitimate interest." *Valley Med. Specialists v. Farber*, 982 P.2d 1277, 1283 (Ariz. 1999). As Pathway demonstrated in its application, Washington takes a broader approach to non-compete agreements, enforcing broad and lengthy provisions. *See* Doc. 44 at 8-9.

Second, Arizona courts do not rewrite non-compete agreements to make them reasonable. As the Arizona Supreme Court has explained, "[a]lthough we will tolerate

ignoring severable portions of a covenant to make it more reasonable, we will not permit courts to add terms or rewrite provisions." *Valley Med.*, 982 P.2d at 1286.  Arizona courts do not "rewrite and create a restrictive covenant significantly different from that created by the parties." *Id*.  Washington law, by contrast, provides that "a trial court has the power to modify a covenant so that it may be enforced to some extent, rather than invalidating the covenant entirely." *Perry v. Moran*, 748 P.2d 224, 230 (Wash. 1987); *see also Armstrong v. Taco Time Intern., Inc.*, 635 P.2d 1114, 1118 (Wash. App. 1981) ("a court may modify the covenant even though the offending portion is grammatically indivisible from the remainder of the covenant").

In a supplemental brief filed on September 28, 2011, Pathway argues that Arizona's case law against rewriting non-compete agreements does not represent a "fundamental policy" of Arizona law sufficient to come within section 187(2)(b). Pathway argues that Arizona's fundamental policy is against overly-broad non-compete agreements, not against rewriting such agreements, and that application of Washington's contract reformation rules would render the provision in this case reasonable and therefore consistent with Arizona policy.  The Court cannot agree, however, that Arizona's policy against rewriting non-compete provisions is not fundamental.  The Arizona Supreme Court has explained that it disapproves of rewriting because such a practice might encourage employers to write overly broad non-compete provisions, knowing that they will apply broadly if not challenged in court and will be rewritten to be enforceable even if they are challenged.  Arizona disapproves of judicial rewriting of non-compete agreements because it seeks to discourage such employer practices and the effect they have on employees who do not or cannot challenge non-compete provisions in court.  As the Arizona Supreme Court has explained:

> For every agreement that makes its way to court, many more do not.  Thus, the words of the covenant have an *in terrorem* effect on departing employees.  Employers may therefore create ominous covenants, knowing that if the words are challenged, courts will modify the agreement to make it enforceable.  Although we will tolerate ignoring severable portions of a

>  covenant to make it more reasonable, we will not permit courts to add terms or rewrite provisions.

*Valley Medical*, 982 P.2d at 1286 (citations omitted). This looks to the Court like a fundamental policy concerning non-compete provisions.

Because the application of Washington law to this case would appear to be contrary to a fundamental policy of Arizona as reflected in the cases discussed above, the Agreement's choice of Washington law likely is not enforceable under Restatement section 187(2)(b).

### C. The Non-Compete Agreement and Arizona Law.

As noted, Arizona appears to be the state with the most significant connections to this transaction under section 188. For several reasons, the Court concludes that the Agreement likely is not enforceable under Arizona law.

First, the non-compete provision contains no geographical limitation. It appears to apply nationwide. Arizona courts do not enforce non-compete agreements with unlimited geographical reach. *See Nouveau Riche Corp. v. Tree*, 2008 WL 5381513, at *7 (D. Ariz. Dec. 23, 2008) (finding the geographic scope of a non-compete agreement overly broad and therefore unlikely to be enforceable); *Liss v. Exel Transp. Servs., Inc.*, 2007 WL 891167, at *8 (D. Ariz. March 20, 2007) (finding the geographic scope of a restrictive covenant unreasonably broad and therefore unenforceable).

Second, the Agreement applies to "any customer" of Pathway, whether or not Nelson ever did business with that customer. The provision thus prohibits Nelson from having contact even with customers with whom he had no prior relationship on behalf of Pathway. Arizona courts do not enforce such provisions. *See Amex Distrib. Co. v. Mascari*, 724 P.2d 596, 603-04 (Ariz. Ct. App. 1986) (an employer can restrict a former employee's ability to service the former employer's customers only with respect to those customers to whom the employee represented the employer's good will); *Nouveau Riche Corp.*, 2008 WL 5381513, at *5 ("a non-solicitation restriction may only protect against

solicitation of those individuals with whom the [d]efendants have formed a meaningful relationship").

Third, the provision is broadly ambiguous. It states that Nelson may not "divert or take away any customer." These words are not defined. Does diverting or taking away a customer include increasing that customer's purchases of the new employer's products and simultaneously decreasing its purchases of Pathway products? Or does it mean that the customer must be lured away entirely from Pathway? The clause also prohibits Nelson from taking any steps to "attempt or assist" the diverting or taking away of a customer. What kind of conduct does this prohibit? Communicating with former customers? Talking to new co-workers about those customers? The provision does not prohibit such conduct, but arguably could be read broadly enough to encompass it.

Because the non-compete provision contains no geographical limit, no limitation to customers with whom Nelson had contact while employed at Pathway, and broad language that could be read to prohibit a wide range of activities that may or may not be damaging to Pathway, the Court concludes that it probably is "greater than necessary to protect the employer's legitimate interest." *Valley Med.*, 982 P.2d at 1283. Under Arizona law, the provision therefore is likely to be unenforceable.[1]

### IV. Conclusion.

The Court concludes that Pathway is not likely to prevail in establishing the enforceability of the non-compete provision in this case. As a result, Pathway has not shown a likelihood of success on the merits. Nor has it shown the existence of serious questions, which require a "fair chance of success on the merits." *Republic of the Philippines v. Marcos*, 862 F.2d 1355, 1362 (9th Cir. 1988) (en banc) (citations omitted). As a result, Pathway is not entitled to a TRO. Because this conclusion would also prevent Pathway from obtaining a preliminary injunction, Pathway's request for such an

---

[1] The Agreement contains a provision allowing a court to rewrite the non-compete language to render it enforceable. Doc. 44-1 at 8. For the reasons explained above, the Court concludes that such a provision is not enforceable under Arizona law.

injunction is also denied.

**IT IS ORDERED:**

1. Pathway's request to file a supplemental brief (Doc. 68) is **granted**.
2. Pathway's application for a TRO and preliminary injunction (Doc. 44) is **denied.**

Dated this 30th day of September, 2011.

_____
David G. Campbell
United States District Judge